IN THE MATTER OF AMENDMENT OF PLAT OF SEQUANOTA
HEIGHTS

(BELFY v KRCHAK)

STATUTES—PLATS—VACATION OF PLATS—AMENDMENT OF PLATS—CON-
STRUCTION OF STATUTES—STANDING.

The statute which sets forth the requirements of who has stand-
ing to apply to a circuit court to "vacate, correct, alter or
revise" a recorded plat contains a conflict as to whether such
action may be brought by a single lot owner in a subdivision or
whether two-thirds of the landowners must join in the action; a
rule of statutory construction that whenever possible all por-
tions of a statute should be given effect leads to a construction
which allows standing to the owner of a single lot as well as to
a group of two-thirds of the lot owners if such a group should
bring an action; this construction is further reinforced by the
presence of a section which confers standing upon a single lot
owner to bring an action to "amend" a plat (MCLA 560.222;
MSA 26.430[222]).

Appeal from Charlevoix, Martin B. Breighner, J.
Submitted June 14, 1977, at Grand Rapids. (Docket
No. 31322.) Decided January 24, 1978.

Complaint by John Belfy, Audrey Belfy, and
others against George Krchak, Sylvia Krchak, and
others to amend a recorded subdivision plat. Accel-
erated judgment for defendants. Plaintiffs appeal.
Reversed and remanded.

*Michael D. Lewis,* for plaintiffs.

*Hoffman & Hoffman,* for defendants George
Krchak, Sylvia Krchak and Eveline Township.

REFERENCE FOR POINTS IN HEADNOTE
82 Am Jur 2d, Zoning and Planning § 343.

Before: M. J. Kelly, P. J., and M. F. Cavanagh and J. R. Rood,* JJ.

Per Curiam. Plaintiffs brought this action seeking to amend the plat of the Sequanota Heights subdivision to widen a private road and decrease the size of certain lots. Plaintiffs are the proprietors of lots 10, 11, and 12 of this 16-lot subdivision. Defendants Krchak are the owners of lots 8 and 9; defendants Marme own lots 1, 14, 15, and 16.

According to plaintiffs' complaint, a private road 20 feet in width is located between lots 7 and 8 along the southern boundaries of lots 9 through 16. This road is impassable in winter and contains 90-degree turns which prohibit snow removal and service to plaintiffs' lots by fire trucks and other emergency vehicles. Plaintiffs averred that to correct these alleged defects the road had to be widened to a minimum of 40 feet and lots 7 through 16 each reduced in size by 20 feet along the boundary of the road.

The several defendants answered, denying plaintiffs' allegations, and also moved for accelerated judgment claiming that since 2/3 of the subdivision's property owners had not signed plaintiffs' petition, plaintiffs lacked standing.

The trial court held that since this Court had construed MCLA 560.222; MSA 26.430(222) to require 2/3 of the property owners to join in a petition to vacate a plat, plaintiffs' petition must be dismissed. From this grant of accelerated judgment, plaintiffs appeal as of right.

A reading of the relevant statutory provisions discloses the problem herein:

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"Sec. 221. The circuit court may as provided in sections 222 to 229:

"(a) Order a recorded plat to be amended by a change in a dimension which results in changing the size or shape of any part of the plat.

"(b) The circuit court may vacate, correct, alter or revise all or any part of a recorded plat." MCLA 560.221; MSA 26.430(221).

"Sec. 222. (1) To amend a recorded plat, the proprietor of the subdivision or any lot in the subdivision may apply to the appropriate circuit court.

"(2) To vacate, correct, alter or revise a recorded plat or any part of it, the proprietor of a subdivision or any lot in a subdivision; the governing body of a municipality which considers it necessary or advisable in the interests of the welfare, health or safety of its citizens; 2/3 of the proprietors collectively, of lands in the subdivision, and who also own 2/3 by area of the lands may apply to the appropriate circuit court." MCLA 560.222; MSA 26.430(222).

There is an obvious conflict between the portion of MCLA 560.222(2) before the first semicolon, allowing the proprietor of any lot in a subdivision to bring an action; and the portion of MCLA 560.222(2) after the last semicolon, requiring 2/3 of the landowners to join in an action.

The trial court resolved this conflict against the plaintiffs based upon this Court's decisions in *Feldman v Monroe Township Board,* 51 Mich App 752; 216 NW2d 628 (1974), *lv den* 391 Mich 837 (1974), and *In re Vacation of Plat of Mollie Britton Estate,* 57 Mich App 468; 226 NW2d 526 (1975). In both of those cases the 2/3 requirement was held to be a prerequisite to standing. However, the majority opinion in *Britton, supra,* offers a well-reasoned critique of *Feldman, supra,* in the following language:

"Looking into my somewhat murky crystal ball I

think that something like the following occurred. When the act was written the 2/3 language was taken out of old § 63 and put into the section governing standing. Then, probably because the Supreme Court regarded it as unconstitutional, the provision making it mandatory that the court grant the relief prayed for was eliminated. However, due to an oversight the 2/3 language was left in the statute. Perhaps, as the plaintiff suggests, the Legislature meant to shift the burden of proof when the 2/3 requirement was met. However, the Legislature left out any mention of what significance the 2/3 requirement would have.

"I also think that a comparison of the language used in subsection 1 of § 222 with the language of subsection 2 is instructive. Subsection 1 confers standing on the proprietor of the subdivision or any lot in the subdivision. Subsection 2 uses the same language and then lists others who have standing. It seems to me that the Legislature meant that a larger class was to have standing under subsection 2 than under subsection 1. Yet, under *Feldman* the class in subsection 2 is narrowed.

"I agree with *Feldman* that the statute is inartfully drafted. I also agree that it is unlikely that the Legislature added the 2/3 language only to have it negated by the earlier language. However, I would point out that it is equally unlikely that the Legislature would confer standing on a proprietor of a lot only to have it taken away by a later clause.

"The rule of statutory construction that whenever possible all portions of the statute should be given effect is violated by *Feldman*. It is not necessary to find a conflict between two portions of the statute. Effect can be given to both provisions if the statute is interpreted as it is written. Granted not many people will ever make use of the 2/3 provision but at worst this approach treats surplusage as surplusage. The *Feldman* approach uses surplusage to reach a result contrary to the legislative intent." 57 Mich App at 471–472.

To us, this construction is preferable. We are free to adopt it as the denial of leave by the

Supreme Court in *Feldman, supra,* does not constitute an affirmance.

We are further persuaded that this is the better interpretation of the statute in light of the unequivocal language of § 222(1). Here, plaintiffs, defendants, and the trial court all treated plaintiffs' petition as it was named: a petition to amend the plat. Under § 222(1), petitioners clearly have standing to amend a recorded plat. Because of the statute's failure to define any distinction between "amending" and "vacating, correcting, altering or revising", we prefer not to base our interpretation solely upon the terminology which a petitioner utilizes.[1] The presence of that section, however, reinforces a construction of the statute which would confer standing upon these plaintiffs. Each of them is a proprietor of a lot in the subdivision and each would be affected by the proposed amendment to the plat. The statute should not be interpreted in a manner which denies them the opportunity of having a court review the merits of their petition.

The judgment below is reversed and the cause is remanded for trial. No costs.

---

[1] Further reference to the problem relating to the lack of definition of terms in the act appears in Cunningham, *Public Control of Land Subdivision in Michigan: Description and Critique,* 66 Mich L Rev 3, 75 (1967).